STATE *ex rel.* ALBERT SAHLEY

*v.*

WILLIAM J. THOMPSON, *Judge,*
INTERMEDIATE COURT, KANAWHA COUNTY,
W. VA., *et al.*

(No. 12599)

AND

STATE *ex rel.* ALBERT SAHLEY

*v.*

WILLIAM J. THOMPSON, *Judge,*
INTERMEDIATE COURT, KANAWHA COUNTY, W. VA., *et al.*

(No. 12600)

Submitted October 5, 1966. Decided December 13, 1966.

337

HAYMOND, JUDGE, dissenting.

*Preiser & Greene, W. Dale Greene,* for relators.

*Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty, C. Donald Robertson,* Attorney General, *Leo Catsonis,* Assistant Attorney General, *Poffenbarger & Bowles, Martin C. Bowles,* for respondents.

BROWNING, JUDGE:

In these two original proceedings petitioner, Albert Sahley, seeks to prohibit respondents, the Judge of the Intermediate Court of Kanawha County and the Prosecuting Attorney for the City of South Charleston, from further proceeding against him upon two separate warrants charging him, respectively, with the offenses of "disorderly conduct" and "resisting arrest". The "disorderly conduct" warrant charges petitioner with a violation of the South Charleston City Code in that ". . . his conduct was (a) contrary to law, (b) violative of the public peace and good order, (c) turbulent, (d) riotous, (e) indecent, contrary to the laws and the ordinances of the said City of South Charleston relating to such offenses, and against the peace and dignity of the State. . . ," and was issued by "K. L. Jarrett, Lieutenant of Police, City of South Charleston Police Department". The "resisting arrest" warrant arose out of the same incident and was also issued by Jarrett in his capacity as lieutenant of police.

The warrants were issued on May 15, 1966, and on May 23, 1966, petitioner was tried thereon in the Municipal Court of South Charleston, found guilty

of both charges, fined a total of seventy-five dollars and sentenced to a total of thirty days in the Kanawha County jail. Prior to trial in the municipal court, petitioner moved to dismiss the "disorderly conduct" warrant on the ground that it failed to fully and fairly inform petitioner of the charge against him and also on the ground that petitioner had been denied his constitutional right to a speedy trial, which motions were overruled. Petitioner appealed such convictions to the Intermediate Court of Kanawha County where he appeared and moved to quash both warrants: the "resisting arrest" warrant on the grounds that a lieutenant of police has no authority, under the provisions of Code, 62-1-10, as amended, to issue such warrant and that petitioner was denied his right to a speedy trial on the charge; and the "disorderly conduct" warrant, substantially, on the grounds that: the ordinance on which it is based is unconstitutionally vague, arbitrary and capricious; the warrant does not advise petitioner of the offense with which he is charged; and the warrant is void because issued by a lieutenant of police in contravention of the constitution and statutes of this state. Both motions were overruled and petitioner, alleging the above, applied to this Court for writs of prohibition which issued rules to show cause why the writs should not be granted as prayed for, returnable October 4, 1966.

In response to the rules, defendants appeared and answered, admitting the factual allegations of the petition, but averring the validity of the warrants, and demurred on the grounds that: the respondent, Martin C. Bowles, is not a proper party to the proceedings; the matters raised herein are not proper to be considered on prohibition but should be raised in due course on writ of error; the grounds asserted, except the validity of the "disorderly conduct" ordinance and the sufficiency of the warrant to adequately inform petitioner of the charge against him, were waived by the failure of petitioner to raise them in

the municipal court; and the issuance of a warrant by a lieutenant of police is constitutional and valid.

Article 7, Section 7.6 of the Charter of the City of South Charleston provides as follows:

"The mayor, city clerk, clerk of the municipal court, chief of police, or in the absence of the chief of police, the captains of police and lieutenants of police shall each have authority to issue warrants for all offenses which are in violation of the ordinances of the City of South Charleston."

It is contended that this ordinance constitutes an unconstitutional delegation of judicial authority and is also in conflict with the general law of this state in that Chapter 62, Article 1, Sections 1, 3, and 10, as amended, are conclusive as to who may issue warrants in this state. Section 1 provides that a complaint, setting forth the essential facts shall be made on oath before a justice of the peace and Section 2 provides that, if it appears from the complaint that there is probable cause to believe an offense has been committed and that the defendant has committed it, a warrant shall issue. Section 3 then provides: "The warrant shall be signed by the justice . . ." and Section 10, entitled "Concurrent Powers" provides as follows: "A judge of a court having jurisdiction to try criminal offenses shall have the same power to issue warrants as conferred upon a justice of the peace by this article. A mayor or judge of a police court acting in the capacity of a justice of the peace shall have all the powers and duties conferred upon a justice by this article." It is also contended by petitioner that if the ordinance be held valid, then the warrants are nevertheless void because the phrase "in the absence of the chief of police" means more than the mere absence of the chief from the station house. In this connection, evidence was taken before the intermediate court which shows that while Jarrett was the ranking officer on duty at the time of issuance of the warrants the chief was at his residence approximately one mile from the station house.

The ordinance defining "disorderly conduct" is as follows:

"Any person whose conduct or behavior shall be such as to be contrary to law or violative of the public peace or good order, or turbulent, riotous, or indecent shall be guilty of a misdemeanor."

The warrant, heretofore quoted, is couched in identical language with the ordinance. The complaints, warrants, and transcripts of the proceedings in the municipal court are attached as exhibits to the petition, and, by stipulation, the evidence adduced before the municipal court, on trial of the charges, and the evidence taken before the intermediate court, upon the question of the chief's absence, are made a part of the record herein.

It is obvious that Chapter 62, Article 1, Section 10 of the Code, as amended, is general legislation prescribing preliminary criminal procedure throughout the State of West Virginia. It is equally obvious that Article 7, Section 7.6 of the charter of the City of South Charleston is, in a sense, special legislation, applying only to that city. Code, 8A-2-13, 14, as amended. It is the view of this Court that there is no conflict between those provisions. However, even if there were such conflict, the special act would prevail over the general. 17 M. J., Statutes, §§ 100, 101, and cases cited therein.

The controlling question presented upon these proceedings is whether the provision of Article 7, Section 7.6 of the charter of the City of South Charleston, insofar as it empowers a lieutenant of police to issue a warrant under certain exceptional circumstances, is invalid as being violative of Article V, Section 1 of the constitution of this state, which reads: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more

than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

This Court has long recognized that it is not possible that division of power among the three branches of government be so precise and exact that there is no overlapping whatever. It is interesting to observe that the earliest case interpreting the legislative powers under Article VI, Section 39, *Wooddall v. Darst*, 71 W. Va. 350, 77 S.E. 264, 80 S. E. 367, held that the powers therein granted to the legislature were "conclusive and not subject to judicial review". However, this Court receded from that adamant position in *Brozka v. Brooke County Court*, 111 W. Va. 191, 160 S. E. 914, and held that an act of the legislature would be held by this Court to violate the applicable constitutional provision if its disregard of such was "clear and palpable". This Court no longer hesitates to declare invalid an act of the legislature which it finds in plain contravention of a provision of the constitution of this state as is shown by the recent decision of *Robertson, et al. v. Hatcher, et al.*, 148 W. Va. 239, 135 S. E. 2d 675. However, no one has ever gainsaid, nor can he, what was stated in the opinion of *Wheeling Bridge, etc. v. Paull*, 39 W. Va. 142, 19 S. E. 551, in discussing the separation of power provision of the constitution: "Were it practicable to keep these three departments wholly distinct, the increase of the necessary offices and officers would be so great, and the expense thereof so burdensome, as to render the cost of the administration of the government unbearable, especially to the citizen tax-payer who must contribute and yet not share in the distribution of the taxes. So that, while we find that the constitution, as much as possible keeps the heads of the three departments comparatively distinct and independent of each other, yet as we move down the scale these several powers become more complicated and interwoven with each other, *until we find the common council of every village exercising legislative, executive and judicial functions, indiscriminately, by*

*authority of the same constitution which declares that
these functions shall be kept distinct."* (Italics supplied.)

It is true that the issuance of an arrest warrant is,
in essence, a judicial act and, of course, the chief,
captains and lieutenants of police of the City of South
Charleston are not members of the judicial branch of
the government of this state. Neither is the city
clerk nor the clerk of the municipal court. But, as
pointed out in the *Wheeling Bridge* case, at the lower
levels of government there must necessarily be an
overlapping of functions in responsible officials lest
the cost of government become too burdensome to
bear. And, as stated in *Ocampo v. U. S.,* 234 U. S. 91,
58 L. ed. 1231, 34 S. Ct. 712, a case in which the
function of finding probable cause for the issuance of
a warrant was delegated to the prosecuting attorney:
"We think, however, that it is erroneous to regard
this function, as performed by committing magistrates
generally . . . as being judicial in the proper sense.
There is no definite adjudication. . . . In short, the
function of determining that probable cause exists
for the arrest of a person accused is only quasi
judicial, and not such that, because of its nature, it
must necessarily be confided to a strictly judicial
officer or tribunal." and, since no proscription was
elsewhere found, ". . . it is, in our opinion, as per-
missible for the local legislature to confide this duty
to a prosecuting officer as to intrust it to a justice of
the peace." More closely in point is the case of *State
v. Furmage,* 250 N. C. 616, 109 S. E. 2d 563. North
Carolina, by general law, provided for the issuance
of warrants by the Chief Justice and associate justices
of the Supreme Court, the judges of the superior
court, judges of criminal courts, presiding officers of
inferior courts, justices of the peace, mayors of cities,
or other chief officers of incorporated towns. A local
law established six district recorders' courts in Robe-
son County and provided that "warrants may be
issued by the recorders of said courts or by any justice

of the peace of Robeson County. . . ." This provision
was subsequently amended to empower the prosecut-
ing attorneys of such courts to issue warrants. A
warrant was issued by the solicitor of a recorder's
court, and a motion was made to quash the same
as in violation of North Carolina's constitutional pro-
vision as to separation of powers. The lower court
sustained the motion and on appeal, the Supreme
Court reversed the decision stating: "While we do
not presently undertake to mark out the precise mean-
ing of . . . [the constitutional provision] we have no
difficulty in concluding that the issuance of a war-
rant, whether considered a judicial act, a quasi-judicial
act, a judicial function, or a ministerial act, does not
require or involve the exercise of *supreme judicial
power* within the meaning of that term as used in . . .
[the constitution]." To similar effect are: *Kreulhaus
v. City of Birmingham,* 164 Ala. 623, 51 So. 297;
*Gladden v. State,* 36 Ala. App. 197, 54 So. 2d 607;
*State v. Van Brocklin,* 194 Wis. 441, 217 N. W. 277;
22 C. J. S., Criminal Law, § 318; 4 Am. Jur., Arrest,
§ 9; 10 Am. Jur., Clerks of Court, § 16.

We are of opinion that Article 7, Section 7.6 of the
charter of the City of South Charleston, in the absence
of any specific statutory proscription, is not in con-
travention of Article V, Section 1, of the constitution
of this state and that the warrants in the instant cases,
issued by a lieutenant of police, were valid. We are
also of opinion that the phrase "in the absence of the
chief of police", as used in the charter, does not
require such absence to be beyond all possibility of
communication but it is sufficient if the chief is away
from his primary place of duty during normal off-duty
hours.

The writs of prohibition as prayed for herein will
be denied.

*Writs denied.*

HAYMOND, JUDGE, dissenting:

I dissent from the decision of the majority of this Court in these prohibition proceedings which denies the writs sought by the petitioner and holds that the warrants of arrest issued by a lieutenant of police of the City of South Charleston during the absence of the chief of police of that city, charging the petitioner with municipal offenses of disorderly conduct and resisting arrest which occurred in that city on the 15th day of May, 1966, are valid and that by virtue of Section 7.6 of Article 7 of the Home Rule Charter of the City of South Charleston the lieutenant of police was authorized to issue such warrants.

Though other incidental questions are involved in these proceedings, the decisive question involves the validity or the invalidity of the warrants, and this dissent is based on the proposition that the lieutenant of police, notwithstanding the charter provision and any ordinances, was without power or authority to issue the warrants because in so acting he exercised judicial power which, because of Article V of the Constitution of this State, could not be conferred upon the lieutenant of police, who is manifestly not a judicial officer but is an executive or administrative officer of the municipality.

Though there may be some decisions to the contrary, the clear weight of authority is that the issuance of a warrant of arrest is a judicial act which can be exercised only by an officer who is authorized by law to issue such warrant. 22 C.J.S., Criminal Law, Section 318; 51 C.J.S., Justices of the Peace, Section 19c; *State ex rel. Anderson v. Gile,* 119 Mont. 182, 172 P. 2d 583; *State v. Furmage,* 250 N. C. 616, 109 S. E. 2d 563; *State v. McGowan,* 243 N. C. 431, 90 S. E. 2d 703; *Bearden v. State,* 29 Okla. Crim. 398, 233 P. 1100; *Beasley v. State,* 26 Okla. Crim. 398, 224 P. 376; *Fraley v. Ramey,* 239 F. Supp. 993; *Williamson v. Waugh,* 160 F. Supp. 72. See also *State ex rel. Staley v. Hereford,* 131 W. Va. 84, 45 S. E. 2d 738. In that case

this Court said that the issuance of civil process, which is analogous to the issuance of a warrant, is by the weight of authority deemed to be a judicial act and that the service of process is regarded as an administrative act. It is also well established that the service of a warrant is an executive function. *State v. Mc-Gowan,* 243 N. C. 431, 90 S. E. 2d 703. Inasmuch as the issuance of a warrant is clearly a judicial act and the service of a warrant is equally clearly an executive or administrative act, the issuance of a warrant by the lieutenant of police, who clearly is not a judicial officer, is violative of Article V of the Constitution of this State.

That article which has been many times considered by this Court, the most recent case being *State ex rel. State Building Commission of West Virginia v. Bailey,* 151 W. Va. ____, 150 S. E. 2d 449, decided during the present term of this Court, provides that "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

Though, as pointed out in the majority opinion, in some of its decisions this Court has recognized that there must necessarily be an overlapping of these powers in certain responsible officials, *Wheeling Bridge and Terminal Railway Company v. Paull,* 39 W. Va. 142, 19 S. E. 551, most of the decisions of this Court and particularly its later and more recent decisions have regarded the constitutional requirement of the separation of the powers of government as a requirement which must be strictly enforced. *State ex rel. Building Commission of West Virginia v. Bailey,* 151 W. Va. ____, 150 S. E. 2d 449; *Farley v. Graney,* 146 W. Va. 22, 119 S. E. 2d 833; *The West Virginia State Bar v. Earley,* 144 W. Va. 504, 109 S. E. 2d 420; *State ex rel. Winter v. Brown,* 143 W. Va.

617, 103 S. E. 2d 892; *State ex rel. Richardson v. The County Court of Kanawha County,* 138 W. Va. 885, 78 S. E. 2d 569; *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11; 168 A.L.R. 808; *Harbert v. The County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177; *Sims v. Fisher,* 125 W. Va. 512, 25 S. E. 2d 216; *Danielley v. City of Princeton,* 113 W. Va. 252, 167 S. E. 620; *State ex rel. Baker v. County Court of Tyler County,* 112 W. Va. 406, 164 S. E. 515; *Price v. City of Moundsville,* 43 W. Va. 523, 27 S. E. 218, 64 Am. St. Rep. 878; *Shephard v. Wheeling,* 30 W. Va. 479, 4 S. E. 635.

In *State ex rel. Building Commission of West Virginia v. Bailey,* 151 W. Va. ......, 150 S. E. 2d 449, with reference to the language of Article V of the Constitution of this State, this Court said: "That language is clear and free from ambiguity and its requirement of the separation of the powers of government must be strictly enforced." In the earlier case of *State ex rel. Miller v. Buchanan,* 24 W. Va. 362, this Court declared that the legislative, executive and judicial departments of government must be kept separate and distinct and that each must be protected in its legitimate sphere of action. In *State v. Huber,* 129 W. Va. 198, 40 S. E. 11, 168 A.L.R. 808, this Court said that no question could be raised as to the plain meaning of the article; and in *Hodges v. Public Service Commission,* 110 W. Va. 649, 159 S. E. 834, this Court also said that its plain language calls not for construction but only for obedience.

In *State ex rel. Richardson v. The County Court of Kanawha County,* 138 W. Va. 885, 78 S. E. 2d 569, an original mandamus proceeding, in which this Court held a statutory provision unconstitutional insofar as it attempted to authorize the Domestic Relations Court of Kanawha County to fix the amounts of salaries of probation officers, medical, clerical, and secretarial assistants, as violative of Article V of the Constitution of this State in that it attempted to vest in the judicial

department a nonjudicial function, said: "It seems apparent, and is pointed out in numerous decisions of this Court, that there can not be, in the very nature of things, any exact delineation of judicial, legislative or executive powers. There must be some mingling or overlapping. The overall purpose of the Constitution is to create a workable form of government, and to deny to any one of the three departments any function actually necessary for the operation of that department would effectively render the form of government impotent. The Constitution itself in effect provides exceptions to the separation of departments made by Article V. For example, county courts are vested with certain judicial powers and 'such other duties, not of a judicial nature, as may be prescribed by law', and Article V itself provides that justices of the peace may serve in the Legislature."

In *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11, in holding unconstitutional certain statutory provisions which undertook to confer administrative powers upon courts of record and in discussing Article V of the Constitution of this State, relating to the separation of the three powers of government, this Court said: "The separation of these powers; the independence of one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained. No theory of government has been more loudly acclaimed."

In *Danielley v. City of Princeton,* 113 W. Va. 252, 167 S. E. 620, in holding unconstitutional a statute which created a State Water Commission, this Court used this language: "The legislative, executive and judicial powers, under the Constitution, are each in its own sphere of duty, independent of and exclusive of the other; so that whenever a subject is committed to the discretion of the legislative or executive department, the lawful exercise of that discretion cannot be

controlled by the judiciary. * * *. This inhibition is so well established that it should be known even to the sciolist.''

In *Hodges v. Public Service Commission*, 110 W. Va. 649, 159 S. E. 834, in declaring unconstitutional a provision of a statute which vested in the Public Service Commission the power to issue license to construct dams, this Court, discussing Article V of the Constitution, said: '' 'Whether a drainage ditch proposed to be constructed * * * will be conducive to the public health, convenience or welfare, or whether the route thereof is practicable, are questions of governmental or administrative policy, and are not of judicial cognizance, and jurisdiction over them by appeal or otherwise cannot be conferred upon the courts by statute.' ''

The majority opinion concedes that the issuance of a warrant of arrest is in essence a judicial act. The issuance of a warrant for the arrest of a person is not a routine or trivial act; it is fraught with serious consequences. The person who is subjected to a warrant of arrest and arrested under it is deprived of his personal liberty and if the warrant is invalid his detention in custody is illegal and is violative of his constitutional right of due process. Section 6 of Article III of the Constitution of this State provides, in part, that ''No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.'' To issue a valid warrant of arrest probable cause must be established and the officer issuing the warrant is required to determine whether such probable cause exists. This is a judicial function and constitutes one of the reasons for considering the issuance of a warrant of arrest to be a judicial act. In these cases the police officer who issued the warrant also made, or assisted in making, the arrest and in that respect performed an executive act. His action in performing functions of a dual nature, judicial in the issuance of the warrant and executive in its service, in my judgment is a clear violation

of the particular language of Article V of the Constitution that "nor shall any person exercise the powers. of more than one of them at the same time * * *," and it was just such conduct in the performance of dual functions of government that the framers of our Constitution intended to prevent by the express statement "nor shall any person exercise the powers of more than one of them at the same time."

Under the foregoing authorities it is my considered opinion that in issuing the warrants here involved, which were clearly judicial acts, the police lieutenant of the City of South Charleston acted in manifest contravention of Article V of the Constitution of this State; that for that reason such warrants are void and of no effect, and this Court, by the issuance of writs in these proceedings, should have prohibited the Intermediate Court of Kanawha County from trying the petitioner on each of such warrants. By its refusal so to do, it in effect created another exception to Article V of the Constitution which, in *State ex rel. Richardson v. The County Court of Kanawha County,* 138 W. Va. 885, 78 S. E. 2d 569, it refused to do and said it could not do merely because the Founders had themselves provided certain designated exceptions.

I am authorized to state that Judge Caplan joins in this dissent.